————o————

## No. 4523.
### Court of Appeal, Parish of Orleans.
## OYSTER COMMISSION OF LOUISIANA VS. SCHOONER "CARROLL C."

1. Where a thing whereof there is an owner passes into a situation antagonistic to the law, he may lose his ownership in it simply because the thing has offended. The punishment, if such it be called, falls on the thing even though the owner be not personally guilty of the crime.

2. Things are condemned as guilty for their active or passive contraventions, by a fiction of law, is deemed the fault of the things themventions, by a friction of law, is deemed the fault of the things themselves; they are held responsible for offenses of omission or commission, imputed to them as though they were conscious and accountable; they are arrested and proceeded against as defendants; they are acquitted or condemned as though they were competent to stand in judgment for their violation of statutes.

3. The guilt of a thing is entirely without reference to its ownership. It does not matter whether there is an owner at all, for an abandoned thing might become guilty by the violation of a statute. There may be an offending owner behind an offending thing, or there may not; it is not essential that there should be. The owner may be perfectly innocent of any offense, yet his property be guilty. He may have entrusted it to an agent without authorizing the latter to use it in contravention of law; yet, if thus used, it might become forfeit.

   Hence, a judgment of forfeiture pronounced against an offending thing—a thing found guilty of contravening a statute which has forfeiture as its sanction, is not a taking of "private property for public use wtihout compensation.

4. Section 26 of Act No. 52 of 1904, which prescribes the forfeiture of all vessels with their cargoes violating the provisions of said act, and which act is in relation to the encouragement, protection, regulation and development of the oyster industry of the State, is not in violaion of Art. 167 of the Constitution of the Stae of Louisiana, and of Art. V of the Amendments to the Constitution of the United States, which inhibit the taking of private propery for public use wihout just compensation.

—51—

5. Where the owner of a vessel which has been seized and is being proceeded against by an action *supra*, for forfeiture under the statute, *in rem* appears in the proceedings by bonding the vessel, and subsequently files an answer, appears by counsel and offers evidence and is otherwise heard, it may not be said, though the owner may not have been formally cited, that he has been denied due process of law.

Appeal from Twenty-ninth Judicial District Court, Parish of St. Bernard.

R. E. Hingle, for Plaintiff and Appellee.

Boatner & Manion, Fred A. Ahrens, Defendant and Appellant.

MOORE, J. This was an action *in rem* instituted by the "Oyster Commission of Louisiana," and directed against the schooner "Carroll C," by which the forfeiture and sale of the schooner is sought because of an asserted violation of the law with reference to fishing oysters in the waters of Louisiana during the closed season, an offence denounced by Section 19 of Act No. 52 of 1904, as amended by Act. No. 178, of 1906.

This schooner was seized by proper authority on the 8th day of May, 1907, and was delivered into the custody of the sheriff of the Parish of St. Bernard, wherein the said seizure was made, and thereafter due proceedings were taken by the Oyster Commission looking to the forfeiture of the vessel, an attorney *ad hoc* being duly appointed to represent the unknown or absent owner of the schooner and who for answer tendered the general issue.

Subsequently, and before trial, the owner, Mrs. Rosina Husley, widow of Harvey, a resident of the State of Mississippi, appeared in the cause, bonded the seizure and filed her answer to the petition. Her answer denies generally the allegations of the petition and sets up in the alternative that at the time the said unlawful acts are charged to have been committed by the master of the vessel, it was under charter to the Barataria Canning Company, and that she had no part in said unlawful acts; "that to confiscate the vessel because of the same, as is demanded, would be to take her property for public use without compensation, in violation of Art. 167 of the Constitution of Louisiana, and of Act 5 of the Amendments to the Constitution of the United States, and that she would thereby be deprived of

her property without due process of law, and be denied the equal protection of the laws in violation of Art. 2 of the Constitution of Louisiana and of the XIVth Amendment of the Constitution of the United States.

There was judgment for the plaintiff as prayed for, and defendant appeals.

The section of the act *supra* which denounces as an offence the acts with which the defendant vessel is charged to have committed, reads as follows:

"That hereafter it shall not be lawful for any person, firm or corporation to take or catch on the natural reefs of this State, or to have such oysters in his possession for sale between the first day of May and the first day of September of each year, except from private leased grounds, and except as hereinafter further provided, but the possession of oysters during said closed season shall be a *prima facie* violation of this act, and the onus shall be upon the accused to establish that the oysters were from private leased grounds. For the purpose of this act all oysters in possession of any person, firm or corporation in this State shall be deemed to be oysters fished in Louisiana waters, and the onus shall be on the possessor of such oysters to prove that they were fished or gathered beyond the jurisdiction of the State of Louisiana.

"The Oyster Commission shall, however, have authority to permit the fishing east of the western boundary of tne Parish of Plaquemines of culled oysters from the natural reefs during the month of May, but only for bedding purposes, and then only under such rules and regulations as said commission may adopt." Sec. 19, of Act 52 of 1904.

The penalty, so far as the vessel is concerned, as declared in Section 26 of the same Act is:

"That all vessels with their cargoes, violating the provisions of this law or the rules and regulations of the commission, shall be seized by any one authorized to make arrests under this act, and taken into custody and delivered to the sheriff of the parish in which the seizure is made, and shall be liable to forfeiture on appropriate proceedings being instituted by the Commission, before the District Court of that Parish * * *"

The evidence is conclusive that the defendant vessel was actively engaged in the violation of the law when it was seized. The Chief Inspector of the Oyster Commission testified that on the 8th day of May, 1907, whilst on duty in the waters of the Parish of St. Bernard, he discovered four vessels dredging oysters on the public reefs located off the coast of the Isle aux Petres, in proximity to what is known as Creole Gap, which is about three miles off the deep water channel of the Louisiana side; that he then gave chase to the vessels, capturing three of them, one having escaped; that among the captured was the defendant vessel which had aboard a partial load of oysters which the Chief Inspector directed to be thrown overboard; that he placed the defendant vessel, as well as the crew, under arrest, and turned vessel and crew over to the sheriff of the Parish of St. Bernard in the waters of which parish the seizure of the vessel by the Chief Inspector was made.

Under this state of facts the forfeiture was properly pronounced.

There is no merit in the contention that the forfeiture, denounced by the statute, *supra*, as a punishment, so to speak, of the offending thing, is a deprivation of property for public use without compensation, and that the proceedings looking to the pronouncement of the forfeiture is a deprivation of property without due process of law.

It is a well-recognized principle of law that where a thing whereof there is an owner, passes into a situation antagonistic to the law, he may lose his ownership in it simply because the thing has offended. The punishment, if such it be called, falls on the thing even though the owner be not personally guilty of crime.

As said by Judge Story in the Palmyra 72 Wheat 14, referring to seizures in revenue cases: "The thing is here primarily considered as the offender, or rather the offense is primarily attached to the thing; and this whether the offense be *malum prohibition or malum in se.*"

Things are condemned as guilty for their active or passive contravention of a statute having forfeiture as its sanction; such contraventions, by a fiction of law, are deemed the fault of the things themselves; they are held responsible for offenses of omission or commission, imputed to them as though they were conscious and accountable; they are arrested and proceeded

against as defendants; they are acquitted or condemned as though they were competent to stand in judgment for their violation of statutes.

The guilt of a thing is entirely without reference to its ownership. It does not matter whether there is an owner at all, for an abandoned thing might become guilty by the violation of a statute; there may be an offending owner behind an offending thing, or there may not be; it is not essential that there should be. The owner may be perfectly innocent of any offense, yet his property be guilty. He may, as in the instant cause, have entrusted it to an agent without authorizing the latter to use it in contravention of law; yet, if thus used, it might become forfeit. Armbruster vs. Behan, 3 Court of Appeal Reports, and cases therein. Ibid.

Hence it is that an offending thing, a thing pronounced guilty for its transgression of a statute which has forfeiture as its sanction, when adjudged forfeited is not "a taking of private proprety for public use without compensation."

So also in view of the fact that the former owner of the defendant vessel personally and voluntarily appeared in the cause, bonded the vessel, filed answer and was otherwise heard in the cause, it may not be said that she was denied due process of law.

The judgment is affirmed.

November 23, 1908.

Rehearing refused December 8, 1908.

Writ denied by Supreme Court January 20, 1909.